RAFAEL DÍAZ FONTÁNEZ ET AL., Plaintiffs and Appellants, *v.* HEIRS OF SERAFÍN DÍAZ ET AL., Defendants and Appellees.

No. 316.   Decided December 18, 1962.

*Samuel R. Quiñones* and *Pablo Andino Espejo* for appellants. *Angel Rivera Colón* for appellees.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

The trial court made the following findings of fact: "2—That Serafín Díaz a married man had sexual relations with Francisca Fontánez from which plaintiffs herein were born before the effectiveness of Act No. 229 of May 12, 1942, as amended, and it so appears from the birth certificates of each and every plaintiff.   (P) 3—That Serafín Díaz never denied that plaintiffs were his children, but on the contrary, he considered them as such and cared for them, providing them with all the necessities for their support.   (P) 4— . . .

That prior to 1943, the administrator of Serafín Díaz's property was his son-in-law, Jacinto Cubano, who acted as such until his death in 1952 and furnished the accountant with all the information needed to prepare the income tax returns. (P) 5—That the income tax returns of the deceased Serafín Díaz for the years 1943, 1944, 1945, 1947, 1948 and 1949 were all prepared by the accountant Joaquín Torres Noriega, at the request of the administrator, Jacinto Cubano, who gave and furnished all the information concerning the income, general deductions, and other data. After the returns were prepared, it was *Serafín Díaz, who read, signed and swore to them before the Collector of Internal Revenue.* (P) 6—That in the income tax returns of the deceased Serafín Díaz for the above-mentioned years, in the part corresponding to the item of general deductions in space which reads: 'Name persons who depend and receive support exclusively from the taxpayer, etc. . . .' *plaintiffs'* names *appear as the taxpayer's children* to benefit from the $400 exemption or deduction for each one for tax-computing purposes."

The trial court, upon denying the judicial declaration requesting voluntary acknowledgment reached the conclusion that: "When Serafín Díaz designated his children, plaintiffs herein, as dependents, it was for the sole purpose of availing himself of the right of exemption, but it was not his intention or purpose to acknowledge them as natural children for all legal effects. (P) For an action to prosper under the authority of Act No. 243 of 1945, it is necessary that the acknowledgment be voluntary, that is, the father must execute a birth certificate, deed or public document wherein the child is expressly acknowledged, solemnly and clearly with the firm purpose of realizing it . . . It is true that pursuant to law an income tax return is a public document, but it is not the document itself, but its contents that must be taken into consideration for the purpose of determining (*sic*) whether or

not the voluntary and express acknowledgment required by law exists of itself."

The applicable law in this case is § 2 of Act No. 229 of May 12, 1942 which provides: "Children born out of wedlock prior to the date this Act takes effect, and who lack the qualifications of natural children according to previous legislation, may be recognized for all legal purposes by the voluntary action of their parents, and in their default, by that of the persons having the right to inherit therefrom. These children will be legitimized by the subsequent marriage of the parents, to each other."

It is after the approval of Act No. 229, that the defendant heirs' predecessor, who had always considered his children as such, and who supported them, as the trial court itself found, filed three income tax returns for the years 1943, 1944, and 1945, stating therein that plaintiffs-appellants in this case were his children, and requesting the corresponding credit for said children. There is no doubt that it is a public document and the trial court so admits it. Besides, it is known that the provision containing the definition of solemn and public document, which is understood to be applicable to these cases of acknowledgment, is § 596 of the Spanish Law of Civil Procedure which includes among public documents ... "other documents in public archives or depending on the State, provinces, or towns, and copies made and authenticated by the secretaries and archivists, by order of the proper authorities." See § 49 of our Law of Evidence—§ 411 of the Code of Civil Procedure of Puerto Rico (1933).

The trial court erred in applying to a solemn and public document—which determines voluntary recognition—the rules applicable to private documents (indubitable writing) —which determine forced or involuntary recognition and require the express, deliberate will to recognize. When referring to §§ 135 and 131 of the Spanish Civil Code (our § 125) MANRESA clearly establishes the distinction between both

means of evidence: "The writing in which the father recognizes his paternity must be a private document, because if the recognition were recorded in a public document it would fall entirely within the voluntary scope of § 131 and there would be no need to compel the father to an act which he had already wilfully realized." 1 MANRESA: *Comentarios al Código Civil Español* 750 (7th Reus ed. 1956).

The only thing we have to decide, under our authority of Court of last instance, is that an income tax return constitutes a public document, for the purpose of a voluntary recognition, pursuant to Act No. 229 of May 12, 1942.

As to the express character of the public document, the rule laid down by the trial court is even stricter than that required by Spanish case law for the indubitable writing pursuant to § 125, for besides the express statement in the private document the incidental—*incidence*—is permitted, it being sufficient that the intention to do so be present, although the document's purpose were another one. We have found such a criterion admirably expressed in the dispositive part of the Judgment of January 22, 1948, of the Supreme Court of Spain which reads as follows: "Whereas although the fifth *Base* of the Act of May 11, 1888—invoked by appellant in support of his thesis—states that 'inquiry into paternity shall not be permitted except in criminal cases or when there exists a writing by the father wherein the indubitable will to acknowledge his paternity is deliberately and purposely expressed or when there is possession of status,' the truth is that between this language and that of § 135 of the Civil Code a marked difference is observed under two distinct aspects: the first is that the fifth *Base* uses the generic term 'child', while § 135 specifically refers to the 'natural child,' and the second aspect—the one which concerns us now for the purpose of deciding the question raised—consists in that the fifth *Base* employs the words 'deliberately and purposely expressed' referring to the indubitable will to

acknowledge, whereas what is required with indubitable character by § 135 is the writing in which the father acknowledges his paternity not the purpose which has inspired such an acknowledgment.

"Whereas the latter difference noted between one legal text and the other—to which this Court referred in its judgments of July 3, 1941, February 8, 1943 and February 10, 1947—destroys the basis of the three grounds alleged in the appeal, since the aforesaid § 135 of the Civil Code did not require as a condition for the acknowledgment of the natural child that the deliberate will of the father to that effect be given credit, and merely required that the writing in which the declaration is made have an indubitable character, without referring to the underlying purpose thereof it is evident that once appellant admitted the authenticity of the documents wherein he designates the minor in question as his daughter and declares himself to be her father—which he does in letters dated June 21 and 26, and September 26, 1934—it cannot be interpreted that the judgment commits any of the legal violations alleged in the first and third grounds or the error of fact pointed out in the second ground, even irrespective of the fact that, as it appears from the letter dated April 30 of the aforesaid year, after learning that appellee herein was pregnant, appellant attempted to predate the marriage, which was celebrated a few weeks after the former had given birth; and the text of the aforesaid fifth *Base* does not preclude the above-mentioned conclusion, because as this Court also established in its old judgments of June 24, 1897 and November 10, 1902, once the Ley de Bases of May 11, 1888 was promulgated, not for application by the courts, but to be followed by the Government when making use of the authority granted by the Legislative Power, the provisions of said Law cannot serve as a ground for any ordinary or extraordinary judicial proceeding."

Appellee relies on the case of *Alvarez* v. *Alvarez*, 77 P.R.R. 862, 866 (Sifre, 1955). If this case is examined, it will be seen that it deals with a verbal admission in an involuntary acknowledgment proceeding for the purpose of precluding the introduction of evidence. The case at bar, respecting voluntary acknowledgment, is best governed by the doctrine established in *Velázquez* v. *Velázquez*, 82 P.R.R. 600, 607 (Blanco Lugo, 1961).

The judgment rendered will be reversed.